FILED
BRYAN COUNTY, OKLAHOMA
DISTRICT COURT CLERK

DEC 21 2018

DONNA ALEXANDER
COURT CLERK
BY_____ Deputy

IN THE DISTRICT COURT OF BRYAN COUNTY
STATE OF OKLAHOMA

| | |
|---|---|
| CHOCTAW DEFENSE SERVICES, INC., | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. CJ-17-1a5 ) |
| T & H SERVICES, LLC, | ) ) ) |
| Defendant. | ) |

## PETITION OF DECLARATORY JUDGEMENT

COMES NOW the Plaintiff, Choctaw Defense Services, Inc ("CDS") for its claim against T & H Services, LLC ("T & H" and alternatively, "Subcontractor"), alleges and states as follows:

## JURISDICTION AND VENUE

1. CDS is a corporation formed under the laws of the Choctaw Nation of Oklahoma (the "Nation") on February 28, 2013, pursuant to Council Bill 56-13 approved February 14, 2013.

2. CDS is wholly owned by the Nation, with its headquarters and principal place of business in Durant, Oklahoma.

3. T & H is a limited liability company with its principal place of business at 4208 198th St., SW, Suite 104, Lynnwood, Washington 98036, is wholly owned by Tlingit Haida Tribal Business Corporation, a federally chartered tribal corporation.

4. CDS and T & H entered into a subcontract agreement with CDS on January 1, 2018 (the "Subcontract"). In addition to the Subcontract, CDS and T & H executed a Subcontract Agreement Modification No. 1 ("Modification") on April 1, 2018.

5. Paragraph 36 of the Subcontract provides that disputes governed by state law shall be brought in state courts located in Bryan County, Oklahoma.

6.    Jurisdiction in this action is proper before this Court pursuant to 12 O.S. § 1651 as this pleading is for the determination of rights in an actual controversy between the parties.

7.    Venue in this action is properly before this Court pursuant to 12 O.S. § 1653 and 12 O.S. § 137 as this action involves the Choctaw Nation, which is headquartered in Bryan County.

### FACTS

8.    The United States Coast Guard awarded the base operations contract no. HSCG-17-D-PKC001 to CDS on July 10, 2017 ("Prime Contract").

9.    The Prime Contract establishes fixed pricing for services under the contract regardless of hours, as well as straight time hourly rates for Indefinite-Delivery, Indefinite-Quantity and Discretionary portions. Under the Prime Contract, neither the U.S. Government nor CDS are required to pay overtime rates.

10.    Prior to entering into the subcontract, KIRA, Inc. ("KIRA") executed a teaming agreement ("Teaming Agreement") with CDS.  KIRA was later acquired by T & H's parent company.

11.    Attachment B of the Subcontract includes a Maximum Total of $4,647,444.94, with a monthly maximum of $387,287.08 for Standing Work.

12.    Section 2 of the Subcontract provides payment rates and timing as follows:

> "Unless otherwise agreed upon in writing, CDS agrees to pay Subcontractor for the Performance of Services performed hereunder in an amount up to the not-to-exceed ceiling established in the Subcontract Rates and Schedule of Values attached hereto and **Attachment B**, and shall make monthly payments on account thereof at the rates specified **in Attachment B**."

13.    Section 5 (b) of the Subcontract provides for the submission of invoices by T & H. as follows:

2

"All invoices shall be submitted on a monthly basis (unless otherwise authorized in advance by CDS). CDS and the Subcontractor will need to agree to all billable amounts to be submitted by the Subcontractor on a valid invoice, CDS will pay the entire amount of Subcontractor's valid invoices within thirty (30) days from the receipt of such invoice subject to the availability of Customer funds, it being understood and agreed that CDS shall pay Subcontractor after CDS has been paid by Customer. Should an invoice be outstanding for more than sixty (60) days due to lack of receipt of Customer payment, CDS will notify Subcontractor in writing as to the cause of the delay, the anticipated payment date, and actions taken to resolve the problem. CDS and Subcontractor shall make reasonable, diligent, and good faith efforts to resolve any invoice amounts that are subject to a bona fide."

14. Section 6 of the Subcontract provides for the Limitations of Funds/Costs (Applicable to Incrementally Funded Subcontracts) as follows in pertinent part as follows:

"For any work or Services that are not subject to firm-fixed price, Subcontractor will perform such work or Services as specified in certain individual Task/Purchase Order may be provided on periodic or incremental basis, and that Subcontractor understands and agrees that funding for a Task/Purchase Order may be provided on periodic or incremental basis, and that Subcontractor shall perform the work or Services specified in the Task/Purchase Order, and satisfy the obligations under the Agreement, within the cost ceiling and the funding amount in the Task/Purchase Order. In the event Task/Purchase Order is not fully funded at the time of award, CDS, at its sole discretion, may incorporate additional funding to support the work requirements as funding is made available to CDS by Customer. Any such additional funding will be incorporated into the Task/Purchase Order by written modification."

15. Section 7 of the Subcontract provides for Notification Requirements in pertinent part as follows:

"Subcontractor shall notify CDS when seventy-five percent (75%) of the authorized funds of a Task/Purchase Order are expended. The notice shall be in writing and state the estimated number of hours and funding required, if any, to continue performance under the Task/Purchase Order, along with an explanation of why the additional time and/or effort are needed. The Subcontractor shall not perform any work or Services beyond the authorized funded amount without the advance written approval of CDS Task/Purchase

3

Order Administrator, and that any such work or Services performed without written authorization shall be at Subcontractor 's own risk."

## **DECLARATORY JUDGMENT**

16. CDS hereby incorporates each of the preceding facts and allegations set forth above as is set forth fully herein.

17. Pursuant to 12 O.S. § 1651, this Court may determine rights, status and other legal relations of the parties seeking such a declaration.

18. There exists an actual controversy between the parties regarding when payments must be made to T & H under Section 5(b) of the subcontract as well as whether the subcontract requires CDS to pay overtime rates to T & H.

19. CDS pays T & H thirty (30) days after it receives payment from the U.S. Government.

20. CDS is not obligated to pay overtime rates for services performed under the Subcontract.

21. Accordingly, CDS seeks a declaratory judgment as follows:

A. a declaration from this Court that Section 5(b) of the Subcontract provides payment will be made to T & H thirty (30) days after CDS receives payment from the U.S. Government.

B. CDS is not required to pay overtime rates for services provided under the Subcontract.

CDS has no adequate remedy by which this controversy may be resolved other than by request for Declaratory Judgment. CDS reserves the right to amend this Petition as necessary and allowed.

WHEREFORE, CDS seeks declaratory judgement as set forth herein, and that it be awarded such other relief this Court deems just and proper.

Respectfully submitted,

*/s/ Patricia Sawyer*

Michael Burrage, OBA #1350
Patricia A. Sawyer, OBA #30712
WHITTEN BURRAGE
512 N. Broadway Ave., Suite 300
Oklahoma City, OK 73102
Telephone:   (405) 516-7800
Facsimile:   (405) 516-7859
Email:   mburrage@whittenburragelaw.com
           psawyer@whittenburragelaw.com

-and-

Lawrence R. Murphy, Jr.
321 South Boston, Suite 300
Tulsa, OK 74103
Telephone:   (918) 986-1759
Email: lmurphypc@icloud.com

**ATTORNEYS FOR PLAINTIFF
CHOCTAW DEFENSE SERVICES, INC.**